UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*,<br><br>    *v.*<br><br>EFRAIN JOHNSON,<br>    *Defendant*. | Civil No. 3:06CR160 (JBA)<br><br><br><br>January 26, 2012 |

RULING ON DEFENDANT'S MOTION TO DISMISS

Defendant Efrain Johnson moves to dismiss Counts One through Four of the Fifth Superseding Indictment, or in the alternative, for a bill of particulars. Mr. Johnson argues that 18 U.S.C. § 1959 as applied to him violates the Commerce Clause, because the Government cannot prove that he was a member of, nor knew of, the Aquart racketeering enterprise, which was headed by Azibo Aquart and "operated primarily within the Charles Street Apartments located at 215 Charles Street, in Bridgeport, Connecticut" (Fifth Superseding Indictment [Doc. # 951] ¶ 1), and whose "members and associates engaged in criminal activity including murder, conspiracy to commit murder, assault and narcotics trafficking" (*id.*). The Government argues that the jurisdictional interstate nexus required under the Commerce Clause is for the racketeering enterprise as an entity, and that as to Defendant's evidentiary sufficiency challenge, his motion is premature. For the reasons that follow, Mr. Johnson's motion to dismiss will be denied, as will his motion for a bill of particulars.

I.      Procedural Background

On July 25, 2011, the Grand Jury returned a Fifth Superseding Indictment ("Indictment" [Doc. # 951]) charging Defendant Johnson and co–defendant Azikiwe Aquart

with Count One, Conspiracy to Commit Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count One); and Murder in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(1) and Aiding and Abetting, in violation of 18 U.S.C. § 2 (Counts Two, Three and Four). As to Defendant Johnson, the Indictment alleges:

> Defendant EFRAIN JOHNSON associated with, and was recruited by, Azibo Aquart to participate, and he did participate in the murders of Tina Johnson, James Reid and Basil Williams in order that EFRAIN JOHNSON could gain entrance to and maintain and increase his position in the enterprise and as consideration for a promise and an agreement to pay anything of pecuniary value from the enterprise.

(Indictment at 3 ¶ 3.) The Indictment further alleges that one of the goals of the enterprise was to "[g]enerate income for members and associates of the Aquart Enterprise through the sale and distribution of narcotics." (*Id.* ¶ 4c.) The Indictment alleges that Defendants Johnson and Azikiwe Aquart conspired to commit the murders in aid of racketeering, and committed the murders of Tina Johnson and her associates "as consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from the enterprise, and for the purpose of gaining entrance to and maintaining and increasing their position in the enterprise" in violation of Conn. Gen. Stat. §§ 53a-48(a), 53a-54c, and 53a-54a, all in violation of 18 U.S.C. § 1959(a)(5). Counts Two through Four allege that Defendant and others murdered Tina Johnson, James Reid and Basil Williams for the identical motives as Count One in violation of Conn. Gen. Stat. §§ 53a-54a, 53a-54c, and 53a-8a, as well as in violation of 18 U.S.C. § 1959(a) and 18 U.S.C. § 2. (*Id.* ¶¶ 11, 14, 17.)

Defendant moves to dismiss Counts One through Four of the Indictment for lack of jurisdiction,[1] claiming that (1) there is no evidence to establish that his participation in the murders affected interstate commerce; (2) that the pecuniary gain purpose of § 1959(a)(1) as alleged in the indictment is essentially the "independent contractor" theory of liability defined in *United States v. Conception*, 983 F.2d 369, 384 (2d Cir. 1992) and that this theory of liability is inconsistent with and violates the Commerce Clause as applied to him; and (3) that Counts Two through Four of the Indictment are flawed and should be dismissed because they fail to specify the form of aider and abetter liability he is charged with under 18 U.S.C. § 2. In the alternative, Defendant moves for a bill of particulars.

II.     Legal Standard

Rule 12(b) of the Federal Rules of Criminal Procedure, governing pretrial motions, provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." A motion to dismiss is "generally capable of determination before trial if it involves questions of law rather than fact." *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993).

On a motion to dismiss in a criminal case, the allegations in the indictment must be accepted as true. *United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir. 1998). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

---

[1] At oral argument, Defense counsel agreed that this challenge was more properly construed as a challenge to the sufficiency of the indictment and an as–applied constitutional challenge.

*Hamling v. United States*, 418 U.S. 87, 117 (1974) (citations omitted). Generally, an indictment is sufficient if it sets forth the offense in the "words of the statute itself, as long as those words of themselves fully, directly, and expressly . . . set forth all the elements necessary to constitute the offense intended to be punished." *Id.* at 117. It need not describe all of the evidence supporting the grand jury's finding of probable cause. *See United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991).

In the absence of a full proffer of the Government's evidence, "the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Alfonso*, 143 F.3d at 776–77 (reversing dismissal of an indictment when the district court "looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial" to satisfy an element of the charge); *accord Costello v. United States*, 350 U.S. 359, 363 (1956) (If "valid on its face," a grand jury indictment "is enough to call for trial of the charge on the merits.") (citations and footnote omitted).

III.   Discussion

Defendant's motion to dismiss and argument appear to elide the sufficiency of the indictment's allegations of Defendant's criminal activity and its nexus to interstate commerce, and the sufficiency of the evidence to be offered to prove the interstate commerce nexus.

    A.   Challenge to the Sufficiency of the Indictment and to the Sufficiency of the Evidence of Defendant's Alleged § 1959 Violation

At its heart, Defendant's contention is that the Government's use of § 1959 to federally indict him improperly turns a purely state crime into a federal prosecution. Defendant maintains that "where the predicate murders, and conspiracy to commit murder,

are the same murders alleged as the racketeering activity engaged in by the enterprise," the Commerce Clause is violated. (Def.'s Mot. to Dismiss at 1.) He does not explain this contention further and his legal premise is not supported by his cited authority, *United States v. Mapp*, which held that because § 1959 "preserves the requirement that any predicate murder, . . . bear a strong relationship to racketeering activity that affects interstate commerce, it does not risk improperly making purely local crimes a matter of federal concern." 170 F.3d 328, 336 (2d Cir. 1999). Further, the Indictment alleges that the Aquart enterprise's racketeering activity included "murder, conspiracy to murder, assault and narcotics trafficking." (Indictment ¶ 1.) "Racketeering activity" for the purposes of § 1959 is defined under 18 U.S.C. § 1961 as "any act or threat involving murder, kidnapping, gambling, arson, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance." Thus, the Indictment alleges more than the "predicate murders" as the basis for the Aquart enterprise's racketeering activity.

Defendant also acknowledges that the Aquart enterprise's racketeering activities may probably affect interstate commerce, and that the murders are alleged to be in aid of racketeering. He claims that as to him, however, the murders are "purely local in nature" because he knew nothing of Azibo Aquart's racketeering enterprise. (Def.'s Mem. Supp. at 8.) Defendant further asserts that "the alleged racketeering activity of the murders, and conspiracy to commit murder, of the enterprise, [sic] by definition do not affect interstate commerce." (*Id.* at 11 (citing Conn. Gen. Stat. §§ 53a-54c, 53a-54a).) In support of his theory that this Court lacks jurisdiction, Defendant cites *United States v. Ferguson*, 246 F.3d 129 (2d Cir. 2001), which granted a new trial in the absence of evidence that defendant Ferguson, the alleged hit man, was a member of the enterprise or seeking to gain membership in the

enterprise. This contrasts with the Fifth Superceding Indictment in Mr. Johnson's case, which expressly states that "Efrain Johnson, . . . together with Azibo Aquart," "were officers, members and associates of a criminal organization, . . . whose members and associates engaged in various acts of criminal activity including murder, conspiracy to murder, assault and narcotics trafficking" (Indictment ¶ 1). It also alleges dual motivations for the murders, one of which is Defendant's desire to gain, maintain, or increase his position in the enterprise. Thus, Defendant's claim that the Indictment as pled shows the lack of federal court jurisdiction is unpersuasive.

At oral argument, Defendant clarified his argument: "there [are] two parts to our motion. One is a practical matter, dismissal is warranted because the Government—just doesn't have the evidence and it can't make—it can't plead the case in such a way to satisfy the necessary element to prove its case to the jury, or alternatively, we need notice of what we're defending against." The Court understands Defendant to be primarily challenging the sufficiency of the Government's evidence to charge him under 18 U.S.C. § 1959, Violent Crimes in Aid of Racketeering ("VCAR"), and under 18 U.S.C. § 2, the aiding and abetting statute. Defendant contends that because the Government cannot prove that he had knowledge of the enterprise's existence, and thus that he knew that his actions were in furtherance or in relation to the enterprise, his prosecution for federal crimes is improper.

First, Defendant argues that the Government's evidence of his VCAR purpose to join, maintain, or increase his position in the Aquart enterprise is insufficient to support the element of interstate commerce under § 1959. Next, as to the "pecuniary gain" motive element in § 1959, discussed by the Second Circuit in *United States v. Concepcion*, Defendant

asserts that the Government must allege and prove that he *knew* of Aquart's racketeering enterprise's existence when he accepted something of pecuniary gain from the enterprise.

The Second Circuit has enumerated five elements necessary to prove a violation of 18 U.S.C. § 1959:[2]

> (1) that the Organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise [or was an "independent contractor"], (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise [or to commit the act of violence as consideration for the receipt of something of pecuniary value from the enterprise].[3]

*United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992).

---

[2] 18 U.S.C. § 1959, "Violent crimes in aid of racketeering activity," provides, in relevant part:

> (a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished.

[3] The Second Circuit enumerated these elements as they pertained to the specific facts at issue in *Concepcion*, in which the defendant's "general purpose" was to "maintain or increase his position in the enterprise." However, the Second Circuit also held that § 1959 reaches "not only those who seek to maintain or increase their positions within a RICO enterprise, but also those who perform violent crimes 'as consideration for the receipt of . . . anything of pecuniary value' from such an enterprise." *Id.* at 384. Here, the Indictment charges both motives.

### 1. *As–Applied Challenge to § 1959*

Defendant's "as–applied" constitutional challenge attacks the sufficiency of the indictment's VCAR counts, arguing that because it does not allege that he was part of the enterprise, or that he knew of the enterprise's existence, the VCAR charges against him should be dismissed:

> Mr. Johnson was not involved in any way with the sale of Azibo's crack cocaine at the Charles Street Apartment. Even Taylor and Lashika, who identified Mr. Johnson, only put him at the Charles Street Apartments in relation to the murders of Tina Johnson, James Reid and Basil Williams, and not the crack cocaine sales. See Tr. 2220–2503 (Taylor), 2808–2903 (Lashika). Importantly, Taylor (Not Mr. Johnson) anticipated that he would become involved in selling Azibo's crack cocaine at the Charles Street based on his involvement in the murders. See, e.g., Tr. at 2285.

(Def.'s Mem. Supp. at 6.) At oral argument, counsel for Defendant further argued that as the Government did not allege (1) his knowledge of the racketeering organization's existence and (2) that he knew that his actions were in furtherance of the racketeering organization, his indictment should be dismissed, since, as applied to him, a prosecution under § 1959 would violate the Commerce Clause.

Defendant's challenge lacks merit for several reasons. As an initial matter, Defendant's sufficiency challenge is premature, as it necessarily turns on the Government's evidence, and his argument relies exclusively on case law that evaluates the sufficiency of evidence in § 1959 cases post jury verdict. *See, e.g.*, *United States v. Thai*, 29 F.3d 785, 819 (2d Cir. 1994) ("While a defendant's § 1959 conviction is to be affirmed if a motivation to maintain or increase his position may be reasonably inferred from the evidence, such a conviction may not be affirmed where, as here, that inference is based on no more than guesswork."). In prosecutions under statutes that contain a jurisdictional element, like

§ 1959, the Second Circuit has held that sufficiency challenges are properly addressed after the Government's presentation of its evidence at trial. *See Mapp*, 170 F.3d at 336 ("The government offered evidence of five robberies, all of which involved the theft or attempted theft of the proceeds of a business that engaged in interstate commerce by selling goods that had been obtained from out of state. This was clearly sufficient evidence to establish the jurisdictional requirement of section 1959."); *see also United States v. Riddle*, 249 F.3d 529, 538 (6th Cir. 2001) ("the jurisdictional provision in the enterprise definition [of § 1959] distinguishes the statute from *Lopez*"). For example, in *United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998), the Second Circuit reversed a district court's dismissal of a Hobbs Act indictment for failure to allege how the conspiracy would have affected interstate commerce. "In the case of a Hobbs Act prosecution, the requirement of an effect on interstate commerce is itself an element of the offense charged, and the determination of whether the jurisdictional element has been satisfied is part and parcel of the inquiry into the "general issue" of whether the statute has been violated." *Id.* at 777. The court further noted that "ordinarily a challenge to the sufficiency of the evidence satisfying the jurisdictional element of the Hobbs Act *is not appropriately decided on a motion to dismiss.*" *Id.* (emphasis added).

Defendant argues that *Alfonso* supports his position, because he contends that the government has made "a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense" such that dismissal of an indictment for failure to satisfy the jurisdictional element of the federal statute would be proper. (Def.'s Reply [Doc. # 1014] at 5 (quoting *Alfonso*, 143 F.3d at 776–77 (citing *United States v. Mennuti*, 639 F.2d 107 (2d Cir. 1981)).) The Defendant distinguishes *Alfonso* by maintaining that the Government's brief "offers a 12–page proffer . . . which . . . tracks in substantial part with the

9

evidence that the government offered at trial against Azibo Aquart and, presumably, both with what it presented to the sixth [sic] grand jury and with what it intends to introduce against Mr. Johnson at trial." (Def.'s Reply at 5.) However, this is not the same scenario described in either *Alfonso* or *Mennuti*. In *Mennuti*, a district court's dismissal of an indictment for failure to satisfy the jurisdictional element of the federal arson statute was affirmed where the government had filed an affidavit making a full proffer of its evidence to be presented at trial, and the district court concluded, based on this full proffer, that the Government's evidence—showing the destruction by arson of two buildings used as residences—did not show an effect on interstate commerce. 639 F.2d at 111. Here, the Government's briefings and its oral argument do not resemble, in substance or purpose, a "full proffer" of the sort alluded to in *Alfonso* or offered in *Mennuti*.

Further, it is undisputed that "narcotics trafficking represents a type of activity that Congress reasonably found substantially affected interstate commerce," *United States v. Miller*, 116 F.3d 671, 674 (2d Cir. 1997), and statutes that contain a jurisdictional element require only a de minimus effect on interstate commerce in order to meet the requirements of the Commerce Clause. *See United States v. Gray*, 137 F.3d 765, 772–73 (4th Cir. 1998) (affirming the § 1959 conviction for the murder of a victim who was a heroin addict who had robbed a stash house, where the inference that the stash house contained heroin and the government's evidence that the poppy seeds required to produce heroin were not grown in Maryland satisfied the interstate nexus requirement); *accord United States v. Davila*, 461 F.3d 298, 306 (2d Cir. 2006) ("For statutes that contain a jurisdictional element—a category that includes section 2332a as well as the Hobbs Act, 18 U.S.C. § 1951—evidence of even a de minimis effect on interstate commerce will satisfy that element."); *United States v. Riddle*,

10

249 F.3d 529 (6th Cir. 2001) (affirming a RICO and a § 1959 conviction where the Ohio–based gambling enterprise purchased Pennsylvania lottery tickets to protect against losses in the illegal gambling business satisfied the "low threshold for a de minimis interstate commerce connection").

The Government maintains, and defense counsel agreed at oral argument, that the Government has ample evidence that the racketeering enterprise meets the de minimus standard here. Since, as defense counsel acknowledged, an as–applied challenge is an intensely factual inquiry, and since the Government has not provided a full proffer of its evidence in this case, the nature of the Government's evidence of Defendant's role in the enterprise cannot be addressed pre–trial. The Government argues that a conviction under VCAR requires it to show "that the enterprise existed and that the enterprise engaged in racketeering activities that affected interstate commerce," and that its evidence will meet the de minimus standard because the Charles Street enterprise's activities, including murder and narcotics trafficking, affected interstate commerce. While Defendant does not dispute that the racketeering activities of the Charles Street organization affected interstate commence, as discussed below, he maintains that the Government must also show Defendant's knowledge or awareness of the enterprise's existence or activities to satisfy the interstate commerce impact of his conduct before he can be convicted under VCAR.

### 2. *Whether Knowledge of the Enterprise Is Required under the "Pecuniary Value" Motive Element of § 1959*

Defendant argues that the Government's allegations as to the "pecuniary value" or "independent contractor" motive element under § 1959 cannot support a conviction because the indictment fails to allege that Mr. Johnson knew of the existence of the Charles Street enterprise. In his briefing, Defendant argues that the constitutionality of the "independent contractor" theory is dubious because the Second Circuit "is the only Circuit to hold 'in passing' that 18 U.S.C. § 1959(a) 'is sufficiently inclusive to encompass the actions of a so–called independent contractor." (Def.'s Mem. Supp. at 12 (citing *Concepcion*, 983 F.2d at 384).)[4] At oral argument, defense counsel clarified that even assuming the constitutionality of this motive element, it requires allegations and proof of knowledge,

---

[4] In *Concepcion*, one defendant, Aponte, argued that the government failed to prove that his killing of one of the victims was "for the purpose of maintaining or increasing Aponte's position in the Organization because, he contends, there was insufficient evidence that Aponte was then a member of the Organization rather than simply an independent contractor." 983 F.2d 369, 384. The Second Circuit observed,

> In passing, we note that § 1959 as a whole is sufficiently inclusive to encompass the actions of a so-called independent contractor, for it reaches not only those who seek to maintain or increase their positions within a RICO enterprise, but also those who perform violent crimes "as consideration for the receipt of . . . anything of pecuniary value" from such an enterprise.

*Id.* The court noted that the evidence at trial included proof that Aponte had received a diamond Rolex watch and $10,000 as consideration for killing the victim and concluded that "[h]ence, even as an independent contractor he could have been prosecuted for a violation of the clause of § 1959 quoted here." *Id.* However, because the indictment alleged only that Aponte had "sought to maintain or increase his position in the organization," the panel was "therefore constrained by those allegations," but affirmed Aponte's conviction nonetheless, holding that the "maintain or increase their positions" motive was satisfied. *Id.* at 384–85.

arguing "I don't think it's explicit in the statute, . . but I think the statute read as a whole and the case law read as a whole clearly shows there has to be knowledge [of the enterprise] and there has to be a fairly close link."

The Government opposes this interpretation of the statute, arguing that all it "has to prove is that the enterprise engaged in racketeering activities that affected interstate commerce." The Government acknowledged in its prosecution of Mr. Johnson under the pecuniary value or independent contractor motive element of § 1959 would fail if Defendant's knowledge of the racketeering enterprise were a requirement of the statute. In response to the Court's inquiry whether the Government had evidence from which a jury could conclude that Mr. Johnson knew of the existence of that enterprise, the Government responded, "No, and our position is we don't have to have that evidence."

Defendant's insistence that his lack of knowledge about the Charles Street organization, or Azibo Aquart's role in the organization, means that these alleged crimes are nothing more than state law murders finds no support in the case law, likely because most § 1959 indictments charge both VCAR motives—that is, that the defendant's violent act was performed in relation to his membership in an enterprise *and* in consideration of the receipt of something of pecuniary value from the enterprise—and thus allegations of membership in an enterprise implicitly includes knowledge of that enterprise. Furthermore, it seems unlikely that the Second Circuit would endorse Defendant's interpretation of the statute when its articulation of the elements of § 1959 does not include the knowledge element Defendant urges, because it deems § 1959 "sufficiently inclusive to encompass the actions of a so–called independent contractor." *Concepcion*, 983 F.2d 369, 384.

13

After considering the Defendant's now–clarified sufficiency challenge, and his specific challenge to the pecuniary value motive element, the Court concludes that the allegations in the Indictment are sufficient to properly charge a § 1959 violation under either motive element. The Government has charged that the activities of the Charles Street enterprise, "including murder, conspiracy to murder assault and narcotics trafficking" (Indictment ¶ 1), "affected interstate and foreign commerce" (*id.* ¶ 2), and that the murders charged were in aid of this narcotics trafficking. The murders were committed at the primary retail outlet of the enterprise and the victims were "rivals" of the Charles Street organization. (*Id.* ¶ 5b.) As alleged, the murders and the drug trafficking activities of the Charles Street organization are intertwined, and the murders are claimed to be committed in furtherance of the drug trafficking enterprise, such allegations satisfy the requirement of a "de minimus effect" on interstate commerce.

As to the pecuniary value motive element, the Government represents that it will offer direct evidence that Defendant participated in the murders with a pecuniary motive: Mr. Johnson accepted something of pecuniary value (two free bags of marijuana) from the enterprise's leader Azibo Aquart, was told at that time that "[Azibo] would need [Johnson's] help later that night," that Mr. Johnson helped Azibo Aquart commit the murders at the Charles Street apartment, that John Taylor will testify that "they had no bats [the murder weapon] until Johnson arrived" (Gov't Opp'n at 13), and that Taylor saw Johnson "standing over victim Basil Williams." (*Id.*) These allegations—that Defendant Johnson had accepted something of pecuniary value from the enterprise through Azibo Aquart, the leader of the Charles Street organization, in return for which Mr. Johnson assisted Aquart in the murder of three individuals who were in competition with Aquart's drug selling

14

enterprise—sufficiently charge a § 1959 crime, not just a state crime, and an element of Defendant's "knowledge" of the enterprise's existence should not be read into the pecuniary value motive element of § 1959. Thus, Defendant's motion to dismiss based on these challenges to the sufficiency of the indictment and evidence must be denied.

>   B.   Challenge to the Aiding or Abetting Charge

Finally, Defendant argues that Counts Two, Three, and Four should be dismissed given the "grand jury's failure to specify with what aiding and abetting conduct Mr. Johnson is charged." (Def.'s Mem. Supp. at 19.)

The two subsections, 18 U.S.C. § 2(a) and (b), cover different criminal conduct, as the Second Circuit noted in *Concepcion*[5]:

> To secure a conviction on a theory of aiding and abetting in violation of subsection (a), the government must prove that the underlying crime was committed by a person other than the defendant and that the defendant acted, or failed to act in a way that the law required the defendant to act, with the specific purpose of bringing about the underlying crime.
>
> Whereas § 2(a) speaks in terms of procuring or aiding and abetting the commission of an "offense," and hence requires proof that the primary actor had criminal intent, § 2(b) speaks in terms of causing the actor to perform only an "act." This subsection was added to § 2 in 1948 order to make[ ] clear the legislative intent to punish as a principal not only one who directly commits an offense and one who "aids, abets, counsels, commands, induces or procures" another to commit an offense, but also anyone who causes the

---

[5] 18 U.S.C. § 2 provides,

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

15

> doing of an act which if done by him directly would render him guilty of an offense against the United States.

*Id.* (citing 18 U.S.C. § 2 Historical and Revision Notes). In *Concepcion*, the court found that while one defendant's conviction "cannot be sustained on the basis of aiding and abetting under § 2(a) because there is no evidence as to who fired the shots," it nonetheless affirmed the jury's finding of guilt under § 2(b). *Id.* Because of the Second Circuit's differentiation between these sections in *Concepcion*, Defendant argues that the Indictment must specify which subsection of 18 U.S.C. § 2 he is charged with, and seeks dismissal of Counts Two through Four or re–submission to a grand jury for the requisite particularity.

Defendant offers no supporting case law or other legal authority that the subsections of 18 U.S.C. § 2 must be itemized in the Indictment. The Government argues that there is no such requirement, citing *United States v. Smith*, 727 F.2d 214 (2d Cir. 1984) (the "well established rule in this and other circuits is that a 'defendant may be indicted for the commission of a substantive crime and convicted of aiding and abetting its commission although not named in the indictment as an aider and abettor'"). Since the Indictment charges violations of § 2, consisting of two components, Defendant is apprised that he is charged under both subsections in the Indictment, in satisfaction of the Fifth and Sixth Amendments. In fact, however, the Government has represented that it intends to pursue only §2(a). Thus, Defendant's motion to dismiss Counts Two though Four will be denied.

    C.    Bill of Particulars

Mr. Johnson argues alternatively that a bill of particulars is necessary and appropriate. The Government opposes, maintaining that it provided voluminous discovery to Defendant and he has had the benefit of trial transcripts of the Government's witnesses

from the trial of Co–Defendant Azibo Aquart, and thus "it is difficult to imagine, given the posture of this case, a theory under which a bill of particulars would be warranted in this case." (Gov't Opp'n at 27.)

Rule 7(f) permits a defendant to seek a bill or particulars "in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). The decision to grant a request for a bill of particulars rests within the sound discretion of the district court. *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).

Given recent trial of Azibo Aquart for these murders , the exhibits, transcripts, and other discovery made available to Defendant, Defendant's claim that he is not aware of the nature of the charges pending against him is unpersuasive, particularly in light of the representations made by the Government at oral argument on January 6, 2012 as to what it claims (and does not claim). In sum, Defendant knows that he is charged under both motive elements of § 1959; he knows that the Government does not have the evidence to show that he knew of the existence of the Aquart enterprise, and that he is charged as an aider and abetter under § 2(a). Therefore, the Court finds that a bill of particulars is not warranted in this situation.

III.	Conclusion

For the reasons discussed above, Defendant's Motion [Doc. # 995–1] to Dismiss Counts One through Four of the Indictment is DENIED, and his Motion for a bill of particulars is also DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 26th day of January, 2012.